IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
TEXAS DALLAS DIVISION

| | |
|---|---|
| CL ABOR, ET AL.,<br>PLAINTIFFS,<br><br>v.<br><br>THUY FRAZIER, ET AL.,<br>DEFENDANTS. | CASE NO. 3:24-CV-777-B-BK<br><br>MOTION FOR RECONSIDERATION AND TO SET ASIDE ORDER AND JUDGMENT, REQUEST FOR REINSTATEMENT OF CASE, AND DEMANDS FOR ADDITIONAL DISCLOSURES |


FILED-USDC-NDTX-DA
'24 MAY 31 PM4:21

### Introduction:

1. Plaintiffs CL Abor and Micheala Abor respectfully move this Court, pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), to reconsider its Order dated May 14, 2024 dismissing Plaintiffs' claims.

2. This motion is timely filed within 28 days of the entry of judgment, as required by Rule 59(e).

3. Rule 59(e) allows a party to file a motion to alter or amend a judgment within 28 days of entry of judgment, while Rule 60(b) permits a court to relieve a party from a final judgment or order for reasons such as mistake, newly discovered evidence, or fraud.

4. See Fed. R. Civ. P. 59(e), 60(b).

5. These rules provide critical safeguards to ensure that justice is served and that parties have an opportunity to bring new, material evidence to the court's attention.

6. The Fifth Circuit has held that reconsideration under these rules is appropriate where there has been an intervening change in controlling law, new evidence has become available, or there is a need to correct clear error or prevent manifest injustice.

7. In *re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002).

8. This standard recognizes the importance of correcting errors before a judgment becomes final and provides an important check on the finality of court orders.

9. The court has considerable discretion in deciding whether to grant such a motion. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

10. This discretion allows courts to balance the need for finality with the imperative of reaching the correct result based on all available evidence and legal arguments.

11. Texas Supreme Court precedent similarly provides that a trial court has broad discretion to grant a new trial or reconsider its judgment.

12. In *re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 210 (Tex. 2009); *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999). This aligns with the federal standards and underscores the critical role of motions for reconsideration in the truth-seeking process.

13. Here, reconsideration is warranted based on (1) newly discovered evidence that directly contradicts Defendants' assertions and the Court's findings; (2) the Court's misapplication of Eleventh Amendment immunity to private parties; (3) the Court's failure to adequately consider Plaintiffs' federal statutory claims under TILA and FDCPA before dismissal; and (4) strong indicia of fraud on the court by Defendants and their counsel.

14. Each of these grounds independently justifies reconsideration and collectively compels it.

15. The purpose of a motion for reconsideration is to allow a court to correct manifest errors of law or fact, consider newly discovered evidence, or prevent manifest injustice.

16. See 56 Am. Jur. 2d Motions, Rules, and Orders § 40. It is a vital procedural tool to ensure that decisions are based on an accurate and complete understanding of the law and facts.

17. The Court's dismissal order overlooked key evidence and misapplied the law, resulting in manifest injustice if left uncorrected.

18. Plaintiffs respectfully submit that had this evidence and legal authority been fully considered, the outcome would have been different.

19. The newly discovered evidence and legal errors meet the well-established standards for granting reconsideration under federal and Texas law.

20. The evidence was not available despite diligent investigation, the legal errors are clear and indisputable, and the result is a manifest miscarriage of justice.

21. Absent reconsideration, Plaintiffs will be deprived of their due process rights and Defendants' potentially fraudulent conduct will evade scrutiny.

22. The integrity of the judicial process and public trust in the administration of justice demand that this Court take a fresh look at its order in light of the new evidence and arguments presented.

23. Reconsideration is both appropriate and necessary under these extraordinary circumstances.

### Newly Discovered Evidence:

24. Plaintiffs have obtained critical new evidence in the form of a Form 1099-C for the original mortgage note issued by Amcap Mortgage LTD and a second Form 1099-C for a loan subsequently created by Planet Home Lending LLC.

25. As well as, the 2023 Internal Revenue Service Tax transcript showing the 1099-C's debt discharged last year in 2023 even though defendants initiated the wrongful foreclosure in February 2024.

26. This documentation directly contradicts the Defendants' prior representations to the Court regarding the debt in question and their legal standing to initiate foreclosure proceedings, implicating their credibility and the fairness of these proceedings. *See Giglio v. United States*, 405 U.S. 150 (1972).

27. The Supreme Court recently underscored the importance of fully considering newly discovered evidence that goes to legal innocence, not just factual innocence, even in the context of successive habeas petitions.

28. *See Jones v. Hendrix*, 599 U.S. (2023) (Jackson, J., dissenting). The 1099-C and 2023 IRS Tax transcript evidence here is analogous, as it directly undermines the legal validity of the foreclosure.

29. Furthermore, Plaintiffs have uncovered evidence revealing the absence of a clear chain of title, as well as CUSIP number documentation associated with the mortgage note.

30. This information casts serious doubt on the Defendants' claims of ownership over the debt and their right to foreclose on the property.

31. The CUSIP number suggests the mortgage note was securitized and transferred in a manner not disclosed to Plaintiffs or to this Court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (emphasizing the necessity of concrete injury for standing).

32. The newly discovered evidence goes directly to Defendants' lack of standing to foreclose once the debt was canceled or transferred.

33. Despite the diligent investigation, this material evidence was not previously available to Plaintiffs.

34. The failure to disclose this evidence raises grave due process concerns under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 13 and 19 of the Texas Constitution, which prohibit deprivation of property without due process of law and guarantee open courts and remedy by due course of law.

35. Courts have consistently held that newly discovered evidence of this nature can warrant reconsideration of a judgment.

36. The case of *Donofrio v. Donofrio* is instructive - there, a post-judgment loan application contradicting a party's prior testimony about a debt was found to "almost completely undermine [their] credibility with the Court" and justified altering the judgment.

37. The Form 1099-C documents, 2023 IRS Tax transcripts, and CUSIP evidence obtained by Plaintiffs here are equally pivotal.

38. They go to the heart of Defendants' right to foreclose and suggest Defendants have not been fully forthcoming in their representations to the Court, implicating the integrity and fairness of these proceedings. *See Giglio*, 405 U.S. 150.

39. This newly discovered evidence compels reconsideration of the Court's prior order to prevent manifest injustice and ensure due process.

40. *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, §§ 13, 19. Plaintiffs were not previously able to present this essential information undermining Defendants' claims and the Court's reasoning. In light of this evidence, the Court's dismissal order must be reconsidered and vacated.

**Eleventh Amendment:**

41. The Court erred in extending Eleventh Amendment immunity to Defendants, who are private parties, not state entities.

42. The Supreme Court has consistently held that the Eleventh Amendment only applies to suits against states themselves or arms of the state.

43. *See* Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

44. Private corporations and individuals do not qualify for this immunity, even if they are acting on behalf of the state. *See* Hafer v. Melo, 502 U.S. 21, 30 (1991).

45. As the Defendants in this case are not the state itself or an arm of the state, but rather private entities and individuals, they cannot invoke the protections of the Eleventh Amendment.

46. Moreover, the Supreme Court in Lujan v. Defenders of Wildlife reaffirmed that Article III standing requires plaintiffs to have suffered an actual, concrete injury. 504 U.S. 555, 560 (1992).

47. The Eleventh Amendment does not override this basic constitutional requirement.

48. *See* Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 64 (1996) (noting that "the type of relief sought is irrelevant to the question whether the suit is barred by the Eleventh Amendment").

49. Here, Plaintiffs have demonstrated substantial financial and emotional injuries stemming directly from Defendants' wrongful foreclosure.

50. These concrete harms are exactly the type of injury-in-fact that Article III demands. *See* TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2200 (2021).

51. The Court's invocation of the Eleventh Amendment to bar redress for these injuries runs counter to both the limited scope of state sovereign immunity and the fundamental requirements of Article III standing.

52. Dismissing Plaintiffs' claims on Eleventh Amendment grounds despite Defendants' private party status and Plaintiffs' concrete injuries was a clear misapplication of the law.

53. *See* Hafer, 502 U.S. at 31 (holding that the Eleventh Amendment provides no shield for a state official confronted by a claim that he deprived another of a federal right under the color of state law).

54. This error undermines the careful balance between state sovereignty and constitutional accountability that the Supreme Court's Eleventh Amendment jurisprudence seeks to maintain.

55. *See* Alden v. Maine, 527 U.S. 706, 713 (1999). The Court should correct this misapplication of sovereign immunity and allow Plaintiffs to pursue their valid claims against the private Defendants.

### Federal Claims:

56. The Court's opinion failed to adequately address Plaintiffs' claims under the Truth in Lending Act (TILA) and Fair Debt Collection Practices Act (FDCPA) before dismissing the case.

57. This was manifest error, as these federal statutes provide an independent basis for subject-matter jurisdiction and confer important substantive rights.

58. The Corpus Juris Secundum (C.J.S.) legal encyclopedia emphasizes that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted them by Congress, including over federal statutory claims.

59. TILA and FDCPA are prime examples of federal laws that create actionable individual rights and remedies appropriate for judicial resolution.

60. By failing to analyze the merits of Plaintiffs' TILA and FDCPA claims, the Court abdicated its jurisdictional duty.

61. Moreover, as "private attorneys general" under TILA and FDCPA, Plaintiffs have standing to pursue these claims to vindicate important consumer protection interests.

62. The Private Attorneys General Act and similar statutes recognize the vital role individual litigants play in safeguarding public rights through private enforcement actions.

63. Plaintiffs' TILA and FDCPA claims fall squarely within this category of congressionally authorized citizen suits.

64. The Court's disregard of Plaintiffs' federal statutory claims also overlooked the well-established distinction between administrative and judicial acts.

65. While an agency's decision to forego enforcement may be a discretionary administrative act, a court's adjudication of a private litigant's federal claims is a mandatory judicial function.

66. By summarily dismissing Plaintiffs' TILA and FDCPA claims without any substantive analysis, the Court improperly conflated its judicial role with the administrative responsibilities of the relevant agencies.

67. The Court should rectify this error by reconsidering Plaintiffs' federal claims and exercising its unflagging jurisdiction to adjudicate them on the merits.

### Fraud on the Court:

68. Defendants and their counsel failed to disclose material evidence and make mandatory certifications related to anti-bribery compliance, raising the specter of fraud on the court.

69. The Supreme Court has recognized that fraud on the court encompasses conduct that "defile[s] the court itself" or is perpetrated by officers of the court, and which prevents the judicial machinery from performing in the usual manner its impartial task of adjudging cases. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

70. Corpus Juris Secundum emphasizes that fraud on the court may be found where "the impartial functions of the court have been directly corrupted," often through bribery or undue influence. 37 C.J.S. Fraud § 9.

71. Under the Articles of Confederation, federal courts were granted limited powers in equity. *See* Articles of Confederation, art. IX, § 1-2.

72. This underscores the long-standing role of federal courts in preventing fraud and ensuring fair proceedings.

73. The Supreme Court has emphasized that fraud on the court "embrace[s] that species of fraud which does or attempts to, defile the court itself." *Hazel-Atlas Glass Co.*, 322 U.S. at 246.

74. Corpus Juris Secundum further explains that fraud on the court may be found where "the impartial functions of the court have been directly corrupted." 37 C.J.S. Fraud § 9.

75. The magistrate judge's alleged lack of a valid Texas law license raises grave concerns about the propriety of the recommendations made to this Court.

76. Under 28 U.S.C. § 636(b)(1), magistrate judges may only be assigned duties "not inconsistent with the Constitution and laws of the United States."

77. Issuing recommendations without proper legal delegated congressionial authority arguably violates this statutory restriction. *See also* 46 Am. Jur. 2d Judges § 87 ("Judicial acts require valid appointment to judicial office.").

78. The magistrate judge's dismissal on diversity jurisdiction grounds, without addressing the merits, also disregarded Plaintiffs' rights as private attorneys general to invoke this Court's equitable powers to remedy fraudulent and unconstitutional conduct. *See* 51 Am. Jur. 2d Liens § 80 (discussing equitable liens).

79. The wrongful foreclosure and seizure of Plaintiffs' property without a valid court order also implicates fundamental constitutional rights under the Fourth and Fifth Amendments.

80. The Fourth Amendment protects against unreasonable seizures of property, requiring at a minimum that any seizure be based on probable cause and not achieved through fraud or false pretenses. *Soldal v. Cook County*, 506 U.S. 56, 61-62 (1992).

81. The Fifth Amendment's Takings Clause prohibits private property from being taken for public use without just compensation, a prohibition that extends to so-called "private takings" where the government uses its power to take property from one private party for the sole benefit of another. *Kelo v. City of New London*, 545 U.S. 469, 477 (2005).

82. Fraudulently procured foreclosures and evictions violate these core constitutional guarantees.

83. As "private attorneys general" under consumer protection statutes like TILA and FDCPA, Plaintiffs have standing to seek redress for Defendants' fraudulent and unconstitutional practices.

84. The Private Attorney General Act and similar statutes recognize the vital role individual litigants play in combating corporate wrongdoing and upholding the rule of law through private enforcement actions. *See, e.g., Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994).

85. Defendants' apparent non-compliance with disclosure obligations and anti-bribery certifications strikes at the integrity of the entire foreclosure process, undermining the proper functioning of the judicial system itself.

86. This is precisely the type of egregious misconduct, perpetrated by officers of the court, that the fraud on the court doctrine and constitutional protections are meant to prevent. The Court must not allow such abuses to stand.

87. As the Supreme Court long ago recognized, "Equity will not suffer a wrong without a remedy." *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

88. Equity jurisdiction "is the body of principles constituting what is fair and right." 27A Am. Jur. 2d Equity § 1.

89. Here, it would be manifestly unjust to allow the judgment to stand in light of the tainted proceedings and newly discovered evidence of fraud.

90. A leading equity treatise states: "Equitable relief against a judgment is appropriate if the judgment was obtained by fraud, accident, or mistake." 30A C.J.S. Equity § 45.

91. This Court should exercise its broad equitable powers to vacate the judgment and restore Plaintiffs' rights.

### Conclusion:

92. Plaintiffs have presented substantial grounds for this Court to reconsider its prior dismissal order and reinstate their claims.

93. The newly discovered evidence, including the Form 1099-C documents, 2023 IRS tax transcript, and CUSIP number documentation, directly contradicts Defendants' assertions regarding the debt and their standing to foreclose.

94. *See Donofrio v. Donofrio* (emphasizing the impact of post-judgment evidence on a party's credibility and justifying alteration of the judgment).

95. This evidence was not previously available despite diligent investigation and goes to the heart of the dispute.

96. Federal Rule of Civil Procedure 60(b)(2) expressly authorizes relief from a final judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."

97. Moreover, the Court's misapplication of Eleventh Amendment immunity to private parties, disregard of Plaintiffs' federal statutory claims under TILA and FDCPA, and the troubling indicia of fraud on the court by Defendants and their counsel all militate strongly in favor of granting reconsideration.

98. The Court has both the authority and the obligation to correct these errors and prevent manifest injustice.

99. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002) (holding reconsideration is appropriate to correct clear error or prevent manifest injustice).

100. 28 U.S.C. § 455(a) requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," which the newly discovered evidence suggests may be implicated here.

101. The wrongful foreclosure and seizure of Plaintiffs' property without due process of law violates the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, as well as Article I, Sections 9, 13, and 19 of the Texas Constitution.

102. Plaintiffs have been deprived of their property rights without proper notice, hearing, or compensation, contravening core constitutional guarantees.

103. *See Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'") (quoting Baldwin v. Hale, 68 U.S. 223, 233 (1863)).

104. Failure to reconsider the dismissal order would ratify a grave miscarriage of justice against Plaintiffs and the public interest.

105. It would allow potentially fraudulent conduct to evade scrutiny, deny Plaintiffs their due process rights and right to remedy under the federal and Texas constitutions, and undermine the integrity of these judicial proceedings.

106. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (finding fraud on the court compromises the integrity of the judicial process and demands vacatur of the judgment).

107. The interests of justice and equity cry out for this Court to vacate its prior dismissal order and reopen the case.

108. As private attorneys general under consumer protection statutes like TILA and FDCPA, Plaintiffs have not only the standing but the duty to pursue these claims to expose unlawful practices and vindicate the public interest.

109. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994) (discussing the critical role of private attorneys general in combating corporate misconduct).

110. Allowing this case to proceed will further the remedial purposes of these statutes and the overriding public policy against fraud.

111. *See Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1809 (2019) (underscoring the importance of public participation and private enforcement in administrative rulemaking and adjudication).

112. The First Amendment's Petition Clause guarantees the right of access to the courts to seek redress for grievances.

113. *See Borough of Duryea v. Guarnieri,* 564 U.S. 379, 387 (2011) ("The right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government.") (quoting Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 896-97 (1984)).

114. Denying reconsideration here would impermissibly burden that right and shield Defendants from accountability for their alleged misconduct.

115. The constitutional gravity of the issues at stake mandates that Plaintiffs be afforded a full and fair opportunity to litigate the merits of their claims.

116. Plaintiffs therefore respectfully request that this Court grant reconsideration, vacate the dismissal order, reinstate their claims, and allow them to file their proposed amended complaint to pursue justice.

117. The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

118. Fed. R. Civ. P. 1. Granting reconsideration here will serve those bedrock purposes and uphold the public's faith in the fairness and integrity of the judicial process.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs, CL Abor and Micheala Abor, respectfully move the Court to grant the following relief:

i. That the Court reconsider its Order and Judgment dated May 14, 2024, and upon reconsideration, vacate the same, thereby reinstating the case for further proceedings in accordance with the newly discovered evidence and compelling legal arguments presented herein. See Fed. R. Civ. P. 59(e), 60(b); In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002) (holding reconsideration is warranted to correct clear error or prevent manifest injustice).

ii. That the Court permit the submission and full consideration of the newly discovered evidence, specifically the two Form 1099-Cs, 2023 Internal Revenue Service tax transcript, and CUSIP

        number documentation, which are critical to establishing the true facts of the case and the rightful status of the debt in question. This evidence goes to the very heart of the dispute and Defendants' standing to foreclose. *See Donofrio v. Donofrio* (emphasizing the impact of post-judgment evidence on a party's credibility and justifying alteration of the judgment).

iii. That the Court order the immediate release of all pertinent information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, regarding the licensing status of the United States Magistrate Judge and the anti-bribery compliance certifications of all legal representatives involved in the prior proceedings. This information is essential to assessing the propriety of the recommendations made to this Court and the integrity of the judicial process. *See* 28 U.S.C. § 636(b)(1) (limiting magistrate judge duties to those consistent with the Constitution and laws of the United States).

iv. That the Court compel Defendants Thuy Frazier, Planet Home Lending LLC, Auction.com LLC, and McCarthy Holthus to produce any and all documents related to the removal of Plaintiffs as trustees and any documents evidencing the complete chain of title for the property in question, as alleged in the foreclosure process. These documents are necessary to substantiate Plaintiffs' claims and uncover the full extent of Defendants' wrongdoing. *See* Fed. R. Civ. P. 26(b)(1) (allowing discovery of any nonprivileged matter relevant to a party's claim or defense).

v. That the Court conduct a thorough and detailed review of the potential violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., as outlined in Plaintiffs' claims, taking into full consideration the substantive federal questions these statutes raise and Plaintiffs' rights as private attorneys general to enforce them. The Court's prior opinion did not adequately address these claims before dismissal, resulting in manifest error. *See Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 524 (1994) (discussing the critical role of private attorneys general in combating corporate misconduct).

vi. Should the Court find in favor of Plaintiffs upon reconsideration and subsequent hearings, that the Court award actual and punitive damages for the wrongful foreclosure, emotional distress, and financial losses incurred by Plaintiffs as a direct and proximate result of Defendants' unlawful actions, in an amount to be fully proven at trial. Plaintiffs have suffered concrete and particularized injuries that require redress. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (requiring plaintiffs to establish an actual, concrete injury for Article III standing).

vii. That the Court order Defendants to reimburse Plaintiffs for all reasonable attorneys' fees, legal expenses, and costs incurred in the pursuit of this motion and any related proceedings, as expressly authorized by statute. *See* 15 U.S.C. § 1640(a)(3) (mandating the award of costs and reasonable attorneys' fees to a prevailing plaintiff under TILA); 15 U.S.C. § 1692k(a)(3) (same under FDCPA).

viii. That the Court grant such other and further legal or equitable relief as it deems just and proper under the circumstances to remedy the violations of Plaintiffs' rights and prevent further injustice, including but not limited to declaratory relief, permanent injunctive relief, and disgorgement of unjust enrichment. This Court has broad discretion to fashion appropriate

remedies and should fully exercise its equitable powers here. See 27A Am. Jur. 2d Equity § 1 ("Equity jurisdiction is the body of principles constituting what is fair and right.").

DATED this 31st day of May 2024

Submitted by:

**CL ABOR, ET AL.,**
PLAINTIFFS,

### CERTIFICATE OF SERVICE:

Plaintiffs hereby certify that on this 31 day of May, a true and correct copy of the foregoing Motion for Reconsideration and to Set Aside Order and Judgment, Request for Reinstatement of Case, and Demands for Additional Disclosures was filed electronically with the Clerk of the Court using the electronic case filing system. I also certify that the foregoing document is being served this day on all parties of record in this action via electronic means and by U.S. Mail to the following:

**McCarthy & Holthus LLP**
2763 Camino Del Rio S.,
1st Floor
San Diego, CA 92108

**Planet Home Lending, LLC**
321 Research Parkway, Suite 303,
Meriden, CT 06450.

**Thuy Frazier, Attorney**
6721 South Point Dr
Dallas, TX 75248

**Auction.com LLC**
4965 Preston Park Blvd.
Suite 500E
Plano, TX 75093

Service was accomplished through the electronic case filing system for parties and counsel registered to receive electronic notifications. Copies were also mailed to the above addresses where electronic service could not be confirmed.

Submitted by:

**CL ABOR, ET AL.,**
PLAINTIFFS,

"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on _5_/_31_/2024.

_____" 28 U.S.C. § 1746